UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DAVID LEON LEWICKI,               )
                                  )
              Petitioner,         )
                                  )
        v.                        )      Case No. 1:20-cv-01653-TWP-CSW
                                  )
DUSHAN ZATECKY,                   )
                                  )
              Respondent.         )

## ORDER GRANTING PETITION FOR A WRIT OF HABEAS CORPUS

This matter is before the Court on 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus filed by Petitioner David Leon Lewicki ("Lewicki") challenging his state custody conviction for aiding, inducing, or causing an attempted robbery causing serious bodily injury. Most of Lewicki's claims are procedurally defaulted, barred by 28 U.S.C. § 2254(d), or otherwise without merit. However, the Court finds that Lewicki's direct appeal counsel was ineffective for failing to raise a Sixth Amendment speedy trial claim, so the § 2254 petition (Dkt. 2) is **granted**.

## I.      BACKGROUND

### A.      Pretrial Delays

In December 2011, Lewicki was charged by Information in the Circuit Court of Madison County Indiana, with attempted robbery as a Class A felony. He requested a speedy trial at his initial hearing on December 20, 2011. (Dkt. 8-5 at 53). Due to court congestion, the trial was reset multiple times and eventually set for March 12, 2013. *Id.* at 53−56. Less than two weeks before the scheduled trial in March 2013, the parties filed a joint motion to continue, and the trial was reset for September 10, 2013. *Id.* at 56.

Shortly before the September 2013 trial date, Lewicki's attorney moved for another continuance, and the trial was reset for December 17, 2013.  *Id.* at 57.  That date was reset to May 20, 2014, based on court congestion.  *Id.*

On July 15, 2014, the state filed an Amended Information that added Class B attempted robbery and a habitual offender sentencing enhancement.  (Dkt. 7-1 at 10.)

The trial date was again moved based on court congestion to November 18, 2014—the date on which Lewicki's trial finally began.  *Id.* at 58−59, 61.

Throughout the pretrial proceedings, Lewicki wrote multiple letters to the trial court reiterating his speedy trial request.  *See* Dkt. 19-1 at 3 (Feb. 3, 2012); *id.* at 4 (Feb. 24, 2012); *id.* at 5 (Feb. 22, 2012); Dkt. 19-2 at 1 (Oct. 8, 2012); Dkt. 19-2 at 2 (undated).  He ultimately asked for his attorney to be removed from the case due in part to pretrial delays.  (Dkt. 19-3.)

## B.  <u>Trial</u>

Lewicki's trial began on November 19, 2014.  The Indiana Court of Appeals summarized the evidence against Lewicki in its opinion following his direct appeal:

> Very late on the evening of December 5, 2011, Lewicki, his girlfriend Brittany Wellman ["Wellman"], his friend Steven Browning [("Browning")], and Browning's girlfriend Jennifer Sprinkle [("Sprinkle")], needed gas money and devised a plan to get some from Humberto Pelayo [("Pelayo")], an acquaintance of Wellman. Lewicki drove the group to Pelayo's trailer in Elwood, where the women lured him to the car with the ruse that they were going to buy marijuana. Browning, who was agitated that Pelayo had sex with Sprinkle in the trailer before leaving, told Lewicki that they would tell Pelayo about buying marijuana, but would instead drive him to a remote spot in the country and leave him stranded after stealing his money.

> Following Browning's directions, Lewicki drove the group to a pig farm and parked between a shed and the residence. After Lewicki ordered the frightened Pelayo out of the car, Browning and Sprinkle began to beat the victim. Browning was hitting Pelayo in the head with a machete Lewicki had previously seen in the car when Lewicki approached and grabbed Pelayo's hand demanding all of his money. At that point, Lewicki received a deep cut to his forearm, which began bleeding heavily. He retreated to the car.

2

Despite Pelayo's severe injuries including large gashes to his scalp, he walked to a residence to ask for help, leaving a significant amount of blood on the porch and doorbell, but no one answered. A passerby telephoned for help after seeing Pelayo along the roadway.

The four perpetrators sped away with Wellman at the wheel. As she drove the group to St. Vincent Mercy Hospital, Browning and Sprinkle came up with stories Lewicki could use to explain his injury. Around 2 a.m., Elwood Police Detective Nicholas Oldham was leaving the hospital on an unrelated matter when he encountered Wellman and Lewicki in the parking lot. Asked what happened, Lewicki claimed he did not remember, and Wellman said Lewicki had been in a fight in the country and been robbed. Lewicki's story later changed when he told Madison County Sheriff's Deputy Juan Galan that while driving down a country road with Wellman they encountered two men fighting and Lewicki was injured trying to stop the fight.

At that point officers considered Lewicki a victim and the three others witnesses. They interviewed Browning and Sprinkle. All four stories conflicted. Browning's and Sprinkle's clothing was stained with blood and dirt, and their hands showed blood and abrasions.

Meanwhile, responding to a dispatch, two officers encountered Pelayo walking along the roadside, with deep lacerations to his scalp and the hood of his jacket saturated in blood. His money was still in an interior pocket of his jacket. Transported to St. Vincent Mercy, Pelayo told Deputy Galan that a girl he knew had asked him for money, that he had left with her and others, after which he was grabbed by the throat and attacked with a knife. Pelayo recalled seeing the image of a pig on the side of a building during the attack.

Gary Davis, who owned the residence Pelayo had approached seeking help, called in to report the blood on his porch. When officers responded to Davis's residence and the spot where Pelayo was found, they managed to locate the building at the pig farm where Pelayo was attacked. Officers recovered Pelayo's shoes and hat, and Sprinkle's purse in the grass. Despite rainy conditions, the gravel driveway showed fresh tire tracks.

As Lewicki's deep laceration was being sutured, the doctor was notified that a patient with severe head trauma had been admitted. Lewicki, who until that point had been reluctant to explain his injury to the doctor and was generally uncommunicative, immediately became interested in the new patient, repeatedly inquiring if he was "still alive." Lewicki was initially given a low dose of Morphine and later a low dose of Dilaudid because he was still in pain. Lewicki did not display any adverse reactions to the medication and spoke clearly with his doctor.

Pelayo suffered three very large lacerations to his scalp, bleeding on his brain, a dislocated right shoulder, and a punch-like laceration to his left groin. His depressed

3

skull fracture was indicative of a brain injury. He continues to experience a lot of head pain and sometimes has difficulty thinking clearly.

Police searched Sprinkle's vehicle after obtaining her consent. They found the machete on the front passenger floorboard where Browning had been seated on the way to the hospital. A smaller green-handled folding knife, with its blade extended, was located in the back seat where Lewicki had sat. Cell phones owned by Sprinkle, Browning, and Wellman were located in the car; Pelayo's cell phone was found in Sprinkle's possession. DNA testing of various items, including the machete, the smaller knife, Browning's clothing, and Lewicki's clothing, revealed evidence connecting Pelayo with Browning and Lewicki.

After Lewicki was discharged from the hospital, he was transported to the Elwood Police Department, where he waived his Miranda rights and gave a recorded statement admitting he knew of the plan to rob Pelayo.

*Lewicki v. State*, 2015 WL 6739702, at *1−2 (Ind. Ct. App. Nov. 4, 2015) (slip opinion at dkt. 7-6) (cleaned up).

Lewicki testified at his jury trial. He admitted that he was part of the events that led to Pelayo's injuries and he knew of Browning's plan to drive Pelayo out into the country and "rip him off." (Trial Tr. 525−28.)[1] But he denied knowing of any plan to rob Pelayo; he testified that he believed Browning "was gonna try to get [Pelayo] to give him some money for pot and then not give him the pot." (Trial Tr. 563.)

Lewicki further testified that he did not leave the car when the group first arrived at the pig farm. Instead, Browning, Sprinkle, and Pelayo left the car together. (Trial Tr. 533−34.) At some point, Lewicki heard a scream. (Trial Tr. 534−35.) He left the car to check it out and found Browning and Sprinkle attacking Pelayo. (Trial Tr. 535.) Lewicki intervened to help Pelayo. (Trial Tr. 536−38.) Indeed, Lewicki "threw [his] arm in front of" the machete Browning was using to attack Pelayo; that's how he got the cut to his forearm. (Trial Tr. 538−39.)

---

[1] "Trial Tr." refers to the hard copy trial transcript submitted by the Respondent.

The jury found Lewicki guilty of aiding, inducing, or causing an attempted robbery causing serious bodily injury ("Class A attempted robbery") and aiding, inducing, or causing an attempted robbery by means of a deadly weapon ("Class B attempted robbery").  (Trial Tr. 645−46.)

**C.    Direct Appeal**

Lewicki appealed, arguing that:

- the trial court erred in denying his motion to suppress statements given during and after his emergency room treatment;

- the trial court erred by supplementing jury instructions during deliberation; and

- trial counsel was ineffective for failing to object to the admission of Sprinkle's, Browning's, and Wellman's judgments of conviction and sentencing orders.

(Dkt. 7-3 at 12−25.)  The Indiana Court of Appeals affirmed.  (Dkt. 7-6.)  Lewicki raised the same issues in his petition to transfer, dkt. 7-7, which the Indiana Supreme Court denied, (Dkt. 7-2 at 5).

**D.    State Post-Conviction Review**

Lewicki filed a petition for state post-conviction review, which he amended several times. In the final version, he argued that appellate counsel was ineffective for failing to argue that:

- his conviction for a lesser included offense violated prohibitions on double jeopardy;

- he was denied a speedy trial under state law and the Sixth Amendment;

- admission of hearsay evidence violated state rules of evidence;

- the charging information was amended after the statutory deadline;

- admission of his accomplices' guilty pleas violated his right to confront witnesses;

- the State committed prosecutorial misconduct during opening and closing statements, by allowing known perjury, and by withholding evidence;

- there were errors in the jury instructions;

- his habitual offender sentence enhancement was improperly stacked;

- he was denied the right to be present at a critical stage when the jury asked a question during deliberations;

- evidence was intentionally destroyed; and

- he was convicted based on insufficient evidence.

(Dkt. 8-4 at 164−74.)  He also argued that appellate counsel was ineffective for raising ineffective assistance of trial counsel on direct appeal without alleging every instance of trial counsel's ineffectiveness.  *Id.* at 165.

After a hearing, the post-conviction court granted partial relief.  The court found that appellate counsel was ineffective for failing to argue that the conviction for a lesser included offense violated prohibitions on double jeopardy. (Dkt. 7-9 at 62−63.)  The court therefore vacated his conviction for Class B attempted robbery.  *Id.* at 63.  The court also noted that Lewicki's habitual offender enhancement for his other conviction had been vacated, thereby mooting any claim of ineffectiveness on that basis.  *Id.* at 61−62.  The court denied relief on all other claims.  Notably, however, the court addressed only Lewicki's state law speedy trial argument, not his federal constitutional argument.  *Id.* at 59−60.

On appeal, Lewicki raised the same arguments that he had raised in the post-conviction trial court—even including the double jeopardy argument on which relief had been granted. (Dkt. 7-9 at 22−46.)  The Indiana Court of Appeals affirmed. *Lewicki v. State*, 18A-PC-2356, 2019 WL 2998518, at *6 (Ind. Ct. App. July 10, 2019) (slip opinion at dkt. 7-12). Like the trial court, the Indiana Court of Appeals omitted any discussion of Lewicki's Sixth Amendment speedy trial argument.  *See* Dkt. 7-12 at 8−9 (discussing only state law speedy trial argument).

Lewicki raised the same arguments in his petition to transfer, dkt. 7-13, which the Indiana Supreme Court denied, dkt. 7-8 at 5.

E.    **Federal Habeas Petition**

Lewicki brought this 28 U.S.C. § 2254 habeas corpus action alleging that:

1.    trial counsel was ineffective for failing to:

    a.    move for discharge based on a speedy trial violation;

    b.    investigate DNA and cell phone evidence;

    c.    challenge amendments to the charging information;

    d.    challenge hearsay evidence and argue a Confrontation Clause violation;

    e.    object to State's opening and closing arguments;

    f.    move to dismiss for double jeopardy violations;

    g.    object to a stacked habitual offender sentence enhancement;

    h.    raise the defendant's right to be present at all critical stages;

    i.    object to evidence of unrelated and uncharged crimes or bad acts; and

    j.    move to suppress cell phones and cell phone information based on lack of foundation;

2.    appellate counsel was ineffective for:

    a.    failing to properly argue that the court erred by issuing a supplemental jury instruction;

    b.    failing to argue a double jeopardy violation;

    c.    failing to argue a speedy trial violation;

    d.    failing to argue state law evidentiary violations;

    e.    failing to argue a late amendment to the charging information;

    f.    failing to argue a Confrontation Clause violation;

    g.    failing to argue prosecutorial misconduct;

    h.    failing to argue that Lewicki's habitual offender sentence enhancement was improperly stacked;

    i.    failing to argue a denial of the right to be present at critical stages;

        j.        failing to argue intentional destruction of evidence;

        k.        failing to argue that Lewicki was convicted based on insufficient evidence; and

        l.        arguing ineffective assistance of trial counsel without raising all instances of trial counsel's ineffectiveness;

3.      he was denied the right to a speedy trial;

4.      he was denied counsel at critical stages of trial;

5.      introduction of Browning's hearsay statements violated the Confrontation Clause; and

6.      introduction of accomplices' guilty pleas violated the Confrontation Clause.

## II.      <u>CLAIMS FOR WHICH LEWICKI LACKS STANDING</u>

As previously noted, several of Lewicki's claims lack standing and the majority are procedurally defaulted. The Court will first discuss the claims that lack standing before turning to those claims which are procedurally defaulted.

Lewicki contends that trial and appellate counsel were ineffective for, among other things, failing to challenge his stacked habitual offender sentence enhancements (Subclaims 1(g) and 2(h)); failing to argue that his convictions for both Class A and Class B attempted robbery violated double jeopardy principles (Subclaims 1(f) and 2(b)); and failing to challenge amendments to the charging information to add Class B attempted robbery and a habitual offender enhancement (Subclaims 1(c) and 2(e)).

But the Class B attempted robbery conviction and the associated habitual offender enhancement were both vacated in state court. (Dkt. 7-9 at 62−64.) Lewicki is therefore not "in custody" for the Class B attempted robbery conviction or the vacated habitual offender enhancement, so he has no standing to challenge trial or appellate counsel's effectiveness on these grounds. *See* 28 U.S.C. § 2254(a) (". . . [A] district court shall entertain an application for a writ

of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."); *Brown v. Vanihel*, 7 F.4th 666, 669 (7th Cir. 2021) ("The state court's vacatur of Brown's conviction ended this court's jurisdiction over the State's appeal because the appeal attacks an order directed to a judgment that no longer exists.").

Subclaims 1(c), 1(f), 1(g), 2(b), 2(e), and 2(h) are therefore **dismissed** for lack of standing.

### III.     <u>PROCEDURALLY DEFAULTED CLAIMS</u>

### A.     <u>Applicable Law</u>

If a petitioner in custody pursuant to a state court judgment raises a claim on federal habeas review without first presenting it through "one complete round of the State's established appellate review process," the claim is procedurally defaulted. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also Hicks v. Hepp*, 871 F.3d 513, 530−31 (7th Cir. 2017). Mere presentment is not enough to avoid procedural default. A petitioner must fairly present the claim; that is, he must "alert[ ] the [state] court to the alleged federal nature of the claim."  *Baldwin v. Reese*, 541 U.S. 27, 33 (2004).  Where, as here, a petitioner alleges ineffective assistance of counsel, each basis for that claim must have been fairly presented in state court.  *See Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009) ("[I]f a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may be considered defaulted.").

Courts look to four factors to determine whether a claim has been fairly presented: "(1) whether the petitioner relied on federal cases that engage in a constitutional analysis; (2) whether the petitioner relied on state cases which apply a constitutional analysis to similar facts; (3) whether the petitioner framed the claim in terms so particular as to call to mind a specific constitutional right; and (4) whether the petitioner alleged a pattern of facts that is well within the

9

mainstream of constitutional litigation." *Brown v. Eplett*, 48 F. 4th 543, 552 (7th Cir. 2022).

"All four factors need not be present to avoid default, and conversely, a single factor alone does

not automatically avoid default." *Whatley v. Zatecky*, 833 F.3d 762, 771 (7th Cir. 2016).

Additionally, a claim is procedurally defaulted if "the state court's disposition of the claim

rests on a state law ground that is adequate and independent of the merits of the federal claim,"

*Triplett v. McDermott*, 996 F.3d 825, 829 (7th Cir. 2021).

To obtain relief on a procedurally defaulted claim, a petitioner must show either "cause and

prejudice" to excuse the default or "that the court's failure to consider the defaulted claim

would result in a fundamental miscarriage of justice." *McDowell v. Lemke*, 737 F.3d 476, 483

(7th Cir. 2013).

**B.   Discussion**

**1.   Ineffective Assistance of Trial Counsel**

Most of Lewicki's contentions about trial counsel's effectiveness are procedurally

defaulted.  On direct appeal, he argued that trial counsel was ineffective for failing to object to the

admission of Sprinkle's, Browning's, and Wellman's judgments of conviction and sentencing

orders, as well as the prosecutor's references to these convictions during closing argument.

(Dkt. 7-3 at 21−25.)  This was the only ineffective assistance of counsel ground he raised on direct

appeal. *See generally id.* On post-conviction appeal, the Indiana Court of Appeals held that

Lewicki was barred from challenging trial counsel's ineffectiveness on any other grounds because

he had raised an ineffective assistance of counsel claim on direct appeal. *Lewicki*, 2019 WL

2998518, at *4 n.1. This is an adequate and independent state-law ground for denying relief. *Cf.*

*Timberlake v. Davis*, 409 F.3d 819, 821 (7th Cir. 2005) ("[I]f the defendant *does* elect to argue

ineffective assistance on direct appeal, this is the only shot; a defendant must choose which time

to make the argument and cannot do it twice.").  Lewicki makes no argument to excuse the defaults. Subclaims 1(a), 1(b), 1(c), 1(h), 1(i), and 1(j) are therefore **denied** based on procedural default.

### 2.    <u>Ineffective Assistance of Appellate Counsel</u>

Several of Lewicki's contentions about appellate counsel's effectiveness are also procedurally defaulted. In his post-conviction petition to transfer, Lewicki argued that direct appeal counsel was ineffective for failing to argue a speedy trial violation and failing to properly argue that the trial court erred in issuing a supplemental jury instruction. (Dkt. 7-13 at 6–9.) By failing to present his other grounds for appellate counsel's ineffectiveness, he defaulted those grounds. *Pole*, 570 F.3d at 935. Lewicki makes no argument to excuse the defaults. Subclaims 2(d), 2(f), 2(h), 2(i), 2(j), 2(k), and 2(l) are therefore **denied** based on procedural default.

### 3.    <u>Other Defaulted Claims</u>

Lewicki did not fairly present the following claims to the Indiana Supreme Court, either on direct appeal or post-conviction review: a stand-alone Sixth Amendment speedy trial claim; a claim of denial of counsel at a critical stage of trial; a stand-alone claim challenging the admission of accomplices' guilty pleas; or a stand-alone claim challenging the admission of Browning's hearsay statements. *See generally* Dkt. 7-7; Dkt. 7-13.  These claims are defaulted, *see Boerckel*, 526 U.S. at 845, and Lewicki makes no argument to excuse the defaults.  Claims 3, 4, 5, and 6 are therefore **denied** as procedurally defaulted.

## IV.   INEFFECTIVE ASSISTANCE OF TRIAL AND APPELLATE COUNSEL

To obtain relief on a claim of ineffective assistance of counsel, a petitioner must show that (1) counsel's performance was deficient; and (2) counsel's deficient performance prejudiced the petitioner. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

In Claims 1(d) and 1(e), Lewicki contends that trial counsel was ineffective for failing to object to the introduction of his accomplices' guilty pleas and sentencing orders into evidence and for failing to object to the State's reference to his accomplices' guilt during opening and closing statements. The Indiana Court of Appeals rejected this claim on direct appeal, holding that trial counsel could have made a reasonable strategic decision not to object, because Lewicki himself testified that his accomplices committed the crime. (Dkt. 7-6 at 9; *see* Trial Tr. 534−39.) This holding was a reasonable application of *Strickland*, so relief is barred by 28 U.S.C. § 2254(d). Lewicki also contends in Claim 2(g) that direct appeal counsel was ineffective for failing to argue prosecutorial misconduct based on "the State's inappropriate damaging comments during opening statements and throughout trial." (Dkt. 2 at 14.)  To the extent Lewicki argues that appellate counsel should have challenged the State's reference to his accomplices' guilty pleas, this claim fails for the same reason: Lewicki himself testified that his accomplices committed the crime. (Trial Tr. 534−39.)

In Claim 2(a), Lewicki contends that appellate counsel "did not properly present or argue the supplemental [jury] instruction issue on appeal." (Dkt. 2 at 12.)  But he does not specify what argument he believes appellate counsel should have raised, and he has not shown that any such argument had a reasonable probability of success.

## V.   INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL–SPEEDY  TRIAL

Lewicki contends that direct appeal counsel was ineffective for, among other things, failing to argue that he was denied a speedy trial in violation of the Sixth Amendment. (Dkt. 19 at 6−11.)

12

The Respondent argues that Lewicki procedurally defaulted this claim by failing to fairly present it at each level of the Indiana court system on post-conviction review and that the claim fails on its merits.  (Dkt. 20; Dkt. 30.)  However, this claim requires further analysis.

## A.      Fair Presentment

The Court has little difficulty finding that Lewicki alerted the post-conviction trial and appellate courts to the federal nature of his claims.  *See* Dkt. 8-6 at 144−56 (arguing ineffective assistance of appellate counsel based on failure to raise state and federal speedy trial arguments); Dkt. 7-9 at 27−37 (same).  The closer question is whether Lewicki fairly presented the claim in his petition to transfer to the Indiana Supreme Court on post-conviction review.

In his petition to transfer, Lewicki laid out the facts underlying his speedy trial claim. (Dkt. 7-13 at 5−7.)  But it is unclear whether he meant to contend that appellate counsel was ineffective for failing to raise a state speedy trial claim, a federal one, or both.  The only reference to the Sixth Amendment speedy trial right is as follows:

> Due to the numerous errors by appellate counsel the Petitioner was denied his Fifth, Sixth, and Fourteenth Amendment to the United States Constitution and Article One, Sections Twelve and Thirteen Indiana constitutional right to effective counsel.

> Because the speedy trial issue is itself a constitutional right afforded by the Sixth Amendment to the United States Constitution and Article One, Section Twelve of the Indiana Constitution, it should be reviewed *de novo*, and this case vacated on these grounds.

(Dkt. 7-13 at 9.)

The Respondent argues that Lewicki's references to the Sixth Amendment were not enough to alert the Indiana Supreme Court that his claim rested on the Sixth Amendment speedy trial right, "because Indiana Criminal Rule 4 is based on a defendant's constitutional speedy trial rights." (Dkt. 30 at 2) (citing *Austin v. State*, 997 N.E.2d 1027, 1037 (Ind. 2013)).   Moreover, the

respondent rightly notes that Lewicki did not cite any Sixth Amendment speedy trial cases in his petition to transfer. *Id.* at 1−2.

Applying the fair presentment factors, *see Brown*, 48 F.4th at 552, results in a close call. The first two factors weigh against Lewicki, as his petition to transfer did not rely on any state or federal cases discussing the Sixth Amendment speedy trial right. But the third and fourth factors both weigh in his favor. He framed the claim in terms particular enough to call to mind the Sixth Amendment speedy trial right. And he alleged a pattern of facts well within the mainstream of Sixth Amendment speedy trial litigation.

Taking the factors together, the Court finds that Lewicki fairly presented this subclaim to the Indiana Supreme Court. The Court will therefore address the merits of this subclaim.

**B.**     **28 U.S.C. § 2254(d) Deference**

Before the Court can actually reach the merits, it must determine the proper standard of review. Where a state court has adjudicated the merits of a petitioner's claim, habeas relief is unavailable unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "The decision federal courts look to is the last reasoned state-court decision to decide the merits of the case, even if the state's supreme court then denied discretionary review." *Dassey v. Dittmann*, 877 F.3d 297, 302 (7th Cir. 2017) (en banc).  If the last reasoned state court decision did not adjudicate the merits of a claim, or if the plaintiff can overcome § 2254(d)'s bar, federal habeas review of that claim is *de novo. Thomas v. Clements*, 789 F.3d 760, 766−68 (7th Cir. 2015).

14

Here, the last reasoned state-court decision was that of the Indiana Court of Appeals on post-conviction review. *Lewicki*, 2019 WL 2998518. The Indiana Court of Appeals recognized Lewicki's contention that appellate counsel was ineffective for failing to make a Sixth Amendment speedy trial argument. *Id.* at *4 (noting Lewicki's argument "that his appellate counsel was ineffective for failing to argue that trial counsel should have raised issues concerning his Sixth Amendment right to a speedy trial"). But while the court addressed counsel's alleged ineffectiveness as it related to Indiana's speedy trial rule, it did not specifically address his Sixth Amendment speedy trial argument. *Id.*

In some circumstances, the denial of a state-law speedy trial claim may imply the denial of any related Sixth Amendment speedy trial claim. *See McKnight v. Superintendent*, No. 3:15-cv-475-JVB, 2017 WL 1151096, at *2 ("Indiana Criminal Rule 4(B) is about the right to a speedy trial . . . . Moreover, the time limits for bringing a defendant to trial set forth in [Rule 4(B)] are more rigorous than the constitutional requirements. Thus, by finding that Rule 4(B) was not violated, the State courts inherently found that the Sixth Amendment was not violated." (cleaned up)). But here, the Indiana Court of Appeals premised its conclusion entirely on waiver. *Lewicki*, 2019 WL 2998518, at * 4 ("Because Lewicki did not object to his trial being set outside the one-year requirement, he waived his right to discharge."). And the Supreme Court has squarely rejected this approach to waiver in the Sixth Amendment speedy trial context. *Barker v. Wingo*, 407 U.S. 514, 528 (1972) ("We reject, therefore, the rule that a defendant who fails to demand a speedy trial forever waives his right . . . . We think the better rule is that the defendant's assertion of or failure to assert his right to a speedy trial is one of the factors to be considered in an inquiry into the deprivation of the right.").

The Indiana Court of Appeals' opinion is therefore subject to two interpretations: either the court adjudicated Lewicki's claim on waiver grounds alone, or it did not adjudicate the claim at all. If the former, then the decision was contrary to *Barker*, so § 2254(d)(1) is satisfied. If the latter, then § 2254(d) does not apply at all. Either way, this Court's review of Lewicki's claim is *de novo*. *Thomas*, 789 F.3d at 766−68.

## C.   Merits Discussion

"The general *Strickland* standard governs claims of ineffective assistance of appellate counsel as well as trial counsel." *Makiel v. Butler*, 782 F.3d 882, 897 (7th Cir. 2015). Thus, Lewicki must show (1) deficient performance and (2) prejudice. *Strickland*, 466 U.S. at 687. Where, as here, the petitioner's claim is poor issue selection, "appellate counsel's performance is deficient under *Strickland* only if [counsel] fails to argue an issue that is both 'obvious' and 'clearly stronger' than the issues actually raised." *Id.*; *see Davila v. Davis*, 582 U.S. 521, 533 (2017) ("Declining to raise a claim on appeal, therefore, is not deficient performance unless that claim was plainly stronger than those actually presented to the appellate court.").

Appellate counsel raised three arguments on direct appeal: (1) the trial court erred in not excluding Lewicki's statements made to police while he was in the hospital before arrest; (2) the trial court erred by supplementing the jury instructions following a juror question during deliberation; and (3) trial counsel was ineffective for failing to object to the introduction of Lewicki's accomplices' judgments of conviction and sentencing orders. (Dkt. 7-3 at 12−25.) Lewicki's proposed Sixth Amendment speedy trial argument is both obvious and plainly stronger than any of the arguments appellate counsel actually raised.

1.    **Grounds raised on direct appeal**

The claims raised by direct appeal counsel were not strong.

First, counsel argued that Lewicki's statements in the hospital should have been excluded because he was in pain from injuries and under the influence of medication. (Dkt. 7-3 at 12−18.) But he failed to point to any evidence of police coercion.  And as the Indiana Court of Appeals explained, "'coercive police activity is a necessary prerequisite to finding a confession is not voluntary within the meaning of the Due Process Clause of the Fourteenth Amendment.'" (Dkt. 7-6 at 7) (quoting *Scalissi v. State*, 759 N.E.2d 618, 621 (Ind. 2001)); *see Colorado v. Connelly*, 479 U.S. 157, 170 (1986) ("The sole concern of the Fifth Amendment . . . is governmental coercion. . . . The voluntariness of a waiver of this privilege has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word.").

Second, appellate counsel argued that the trial court erred in providing a supplemental jury instruction in response to a question during deliberation because the instruction suggested the judge's interpretation of evidence produced at trial.  (Dkt. 7-3 at 20−21.)  But as the Indiana Court of Appeals found, this argument was forfeited because trial counsel did not raise it.  (Dkt. 7-6 at 8); *see id.* at 8 n.3 (noting that even absent forfeiture this argument was meritless).

Third, appellate counsel argued that trial counsel was ineffective for failing to object to the introduction of his accomplices' judgments of conviction and sentences.  But, because there was no evidentiary hearing before the direct appeal, there was no way for Lewicki to rebut the presumption that counsel's choice not to object was strategic.  (Dkt. 7-6); *see Woods v. State*, 701 N.E.2d 1208, 1216 (Ind. 1998) ("'When the only record on which a claim of ineffective assistance is based is the trial record, every indulgence will be given to the possibility that a seeming lapse or error by defense counsel was in fact a tactical move, flawed only in hindsight. It is no surprise

that such claims almost always fail.'" (quoting *United States v. Taglia*, 922 F.2d 413, 417−18 (7th Cir. 1991))). There is no plausible strategic reason why direct appeal counsel should have raised ineffective assistance of trial counsel on direct appeal instead of waiting for post-conviction review, where the record could be fully developed. *See also Brown v. Brown*, 847 F.3d 502, 512 (7th Cir. 2017) (noting that criminal defense attorneys in Indiana are trained not to raise ineffective assistance of counsel claims on direct appeal).

### 2.      Proposed Sixth Amendment speedy trial argument

Lewicki's proposed Sixth Amendment argument is plainly stronger than the grounds actually raised on direct appeal.

Courts must consider four factors in assessing a Sixth Amendment speedy trial claim: (1) the length of delay; (2) the reasons for delay; (3) whether the defendant asserted his speedy trial right; and (4) whether the defendant was prejudiced. *Barker*, 407 U.S. at 530.

Here, the first three *Barker* factors all weigh in Lewicki's favor, to varying degrees. The first factor weighs between moderately and strongly in his favor. A delay of more than one year is presumptively prejudicial, *United States v. Oriedo*, 498 F.3d 593, 597 (7th Cir. 2007), and Lewicki waited nearly three years for trial. The second factor weighs slightly in his favor, as more than two years of the delay was due to court congestion. *Barker*, 407 U.S. at 531 ("A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."). The third factor, which is fairly binary, also weighs in Lewicki's favor. He repeatedly notified the trial court that

18

he wanted a speedy trial and even replaced his attorney because of the attorney's inability to move forward toward trial.  (Dkt. 19-1; Dkt. 19-2; Dkt. 19-3.)

The fourth factor—prejudice—is the only one that does not obviously weigh in Lewicki's favor.  In assessing prejudice, courts must consider "the interests the right is intended to protect: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that defense will be impaired." *Ashburn v. Korte*, 761 F.3d 741, 753 (7th Cir. 2014) (cleaned up).  "Actual prejudice to the defense is the most serious concern raised by a delay because it may skew the fairness of the entire system." *United States v. Oriedo*, 498 F.3d 593, 600 (7th Cir. 2007).  Lewicki asserts, with no citation, that his pretrial custody caused hardship to himself and his family.  (Dkt. 19 at 10.)  However, it appears he would have been in custody for a substantial portion of the pretrial period regardless of the delays in this case.  Lewicki had previously received a suspended sentence of 363 days for an unrelated Indiana conviction.  *State v. Lewicki*, 80C01-1005-FC-00141 (Cir. Ct. Tipton County).[2]  After his arrest for the offenses at issue here, the State moved to revoke his probation on January 10, 2012.  *Id.*  Lewicki's probation was revoked, and he was ordered to serve the full 363-day suspended sentence.  *Id.*  Additionally, Lewicki was charged in October 2012 in an unrelated criminal case. *Indiana v. Lewicki*, 48C04-1210-FA-001836 (Cir. Ct. Madison County).  He pled guilty on April 15, 2013, and was sentenced to an aggregate 60-year prison term.[3]  *Id.*

Lewicki also contends that he was prejudiced because the additional time before his trial allowed the government to amend the charging documents and obtain additional evidence,

---

[2]  The online dockets for this and other state cases referenced in this Order are available by search at https://public.courts.in.gov/mycase/#/vw/Search.

[3]  It appears that the conviction in 48C04-1210-FA-001836 was reduced to a Class C Battery Committed by Means of a Deadly Weapon or Resulting in SBI, 6 year sentence on August 16, 2019. *See* https://public.courts.in.gov/mycase/#/vw/Search.

including DNA evidence.  (Dkt. 19 at 11.)  The question of actual prejudice is better left to the state court in the first instance.  But even without a showing of prejudice, three of the four *Barker* factors weigh at least somewhat in Lewicki's favor.  Thus, his proposed Sixth Amendment speedy trial claim is both obvious and plainly stronger than the arguments appellate counsel actually raised, and there is a reasonable probability that he would have obtained relief on direct appeal had counsel raised this argument.

**D.**     **Remedy**

Because Lewicki has shown that direct appeal counsel was ineffective for failing to raise a Sixth Amendment speedy trial argument, he is entitled to habeas corpus relief.  Within 120 days after the entry of final judgment in this case, the State of Indiana shall allow Lewicki a new appeal in which he will have the opportunity to advance the Sixth Amendment speedy trial argument that his appellate counsel should have raised. *See Shaw v. Wilson*, 721 F.3d 908, 919 (7th Cir. 2013).

## VI.     CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Proceedings in the United States District Courts requires the district court to "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Without a certificate of appealability, a petitioner may not appeal from a final order in a 28 U.S.C. § 2254 habeas corpus proceeding. 28 U.S.C. § 2253(c)(1)(A).

Here, although the Court has granted Lewicki relief, it has not granted the full relief he requested.  (Dkt. 2 at 30) ("Petitioner asks that the Court Dismiss remaining Count I and discharge the Petitioner or grant any other relief the Court finds just and appropriate."); *see Barker*, 407 U.S. at 522 (dismissal of the indictment is "the only possible remedy" for a Sixth Amendment speedy trial violation).  It is therefore possible for Lewicki to file an appeal or cross-appeal from the judgment in this action, which may require a certificate of appealability. *See Jennings v. Stephens*,

574 U.S. 271, 282−83 (2015) (declining to address whether a petitioner must obtain a certificate of appealability before filing a cross-appeal following the grant of habeas relief).

A certificate of appealability will issue only if the petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(1), (c)(2). Where a petitioner's claims are resolved on procedural grounds, a certificate of appealability should issue only if reasonable jurists could disagree about the merits of the underlying constitutional claims and about whether the procedural ruling was correct. *Flores-Ramirez v. Foster*, 811 F.3d 861, 865 (7th Cir. 2016) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Here, the Court has denied relief on all of Lewicki's claims except ineffective assistance of direct appeal counsel. No reasonable jurist would disagree that the denied claims are some combination of procedurally defaulted, barred by 28 U.S.C. § 2254(d), or without merit. The Court therefore **DENIES** a certificate of appealability on all of the denied claims.

## VII.      CONCLUSION

Thoughtful analysis of Lewicki's § 2254 claim of ineffective assistance of direct appeal counsel presents a close call, which the Court has decided in his favor. For the reasons stated above, Lewicki's petition for a writ of habeas corpus is **GRANTED**. Within 120 days after the entry of final judgment in this case, the State of Indiana shall either allow Lewicki a new appeal in which he may argue the Sixth Amendment speedy trial issue or release him.

Final judgment shall now issue.

**SO ORDERED.**

Date:  9/21/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

21

DISTRIBUTION:

Terry Wayne Tolliver
BRATTAIN MINNIX TOLLIVER
terry@BMGIndy.com

Andrew A. Kobe
THE OFFICE OF THE INDIANA ATTORNEY GENERAL
andrew.kobe@atg.in.gov